# Ervin v. Dauphin Deposit Trust Company

*John C. Sullivan* and *James H. Stewart, Jr.,* for plaintiff.

*Dowling & Dowling* and *Rhoads, Sinon & Reader,* for defendant.

HERMAN, J., December 6, 1965.—Defendant, Dauphin Deposit Trust Company, has filed preliminary objections to the complaint of plaintiff, Carl E. Ervin, a physician of the City of Harrisburg.

The complaint in assumpsit avers, in substance, in count no. 1, that the trust company accepted certain checks made payable to plaintiff for his professional services, but on which plaintiff's name was forged, collected the amounts of the checks from the various drawee banks, and paid over the amounts of the checks to a person or persons other than plaintiff. It is further averred that these checks had been "intercepted" or "removed from Plaintiff's possession by a person or persons other than Plaintiff who forged the name of the payee as an endorsement on said checks".

In count no. 2, it is averred that on other checks similarly payable, intercepted or removed, and forged, but which had been drawn on defendant, the trust company accepted them and "collected the amount of . . . [such checks] by debiting the accounts of their depositors without crediting the account of the Plaintiff".

It is then averred as to both counts that the money collected is money had and received for the benefit of

plaintiff by defendant, but that defendant, after demand, has failed to pay it over to plaintiff.

Defendant's preliminary objections take the form of a demurrer and a motion for a more specific complaint. In the demurrer, it is contended that the complaint sets forth no contractual duty owed to plaintiff by defendant, and no breach of any duty of defendant to plaintiff; that it sets forth no facts showing that defendant received or is holding any money belonging to plaintiff; that it sets forth no facts showing that defendant did not receive the checks for value in good faith without notice of any claim to them on the part of any person; that it sets forth no facts to show that the checks were not negotiated to defendant and immediately paid to the person negotiating them; and finally, in summary, that the complaint does not set forth a cause of action against defendant.

In the motion for a more specific complaint, defendant complains that the person or persons who allegedly intercepted plaintiff's checks and forged the name of the payee were not named; that the manner in which the forged indorsements differed from plaintiff's handwriting was not set forth, and that the person or persons to whom defendant allegedly paid the amounts of the checks were not named.

The question raised by the demurrer may be fairly stated to be: Is defendant bank liable, in this action of assumpsit, for money had and received when it cashed checks payable to plaintiff-payee, whether drawn on it or on some other bank or banks, when the payee's signature was forged? We think the question must be answered in the affirmative.

In considering a demurrer, the material facts well pleaded in the complaint must, of course, be accepted as true, as must all inferences fairly deducible therefrom: Mistick v. Cammack, 397 Pa. 296 (1959); Adams v. Speckman, 385 Pa. 308 (1956); Goodrich-

Am. §1017(b)-11. Viewed in this light, therefore, the facts with which we are here concerned are these: Doctor Ervin, after rendering services to various patients, billed them, and in response to these statements checks payable to him were mailed to the doctor's office. Certain checks were intercepted and others removed from his possession by a person or persons other than plaintiff, who then forged his name as the payee as an indorsement on said checks. The checks, which were drawn on various banks other than defendant bank, were presented to the Dauphin Deposit Trust Company, which paid the amount of the checks to the person or persons presenting them. After paying the checks, defendant bank forwarded them to the drawee banks, and was reimbursed for the amount of its payment. As to the checks drawn on Dauphin Deposit Trust Company, the trust company after paying them debited the accounts of its depositors, the drawers, and presumably still retains the checks, which are the property of plaintiff.

There seems to be no question that if there is a cause of action it will lie either in tort or assumpsit. See Coffin v. Fidelity-Philadelphia Trust Co., 374 Pa. 378 (1953); Johnson v. First National Bank of Beaver Falls, 367 Pa. 459 (1951); Land Title Bank & Trust Company v. Cheltenham National Bank, 362 Pa. 30 (1949); Lindsley v. First National Bank of Philadelphia, 325 Pa. 393 (1937); Real Estate Land Title & Trust Co. v. United Security Trust Co., 303 Pa. 273 (1931); Zidek v. Forbes National Bank, 159 Pa. Superior Ct. 442 (1946).

Concerning the checks drawn on banks other than defendant, Lindsley v. First National Bank, supra, appears to be controlling, unless it was overruled by the Uniform Commercial Code (hereinafter referred to as "code"), which became effective in Pennsylvania on July 1, 1954.

In the Lindsley case, plaintiff Lindsley had received in the course of business some 65 checks over a period of a year and a half, payable to Lindsley's order and drawn on banks other than the defendant bank. Plaintiff's signature was forged by its bookkeeper, who then delivered the checks to others who deposited them in defendant bank. Suit was brought in assumpsit, and defendant demurred. The lower court, on the strength of Tibby Brothers Glass Company v. Farmers & Mechanics Bank of Sharpsburg, Pa., 220 Pa. 1 (1908) (hereinafter discussed), found in favor of defendant bank. The Supreme Court unanimously reversed.

Section 23 of the Negotiable Instruments Law, Act of May 16, 1901, P. L. 194, which was in effect at the time the Lindsley problems arose, provided:

"When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority".

The court found that under this section of the Negotiable Instruments Law, the facts of this case made out a conversion by defendant of plaintiff's property, for which plaintiff could sue defendant in assumpsit for money had and received. To the same effect, see Coffin v. Fidelity-Philadelphia Trust Co., supra; Johnson v. First National Bank of Beaver Falls, supra; Land Title Bank & Trust Company v. Cheltenham National Bank, supra; Real Estate Land Title & Trust Co. v. United Security Trust Co., supra; Zidek v. Forbes National Bank, supra.

In the Tibby case, the facts were not greatly different from those in the Lindsley case, except that the

checks were *cashed* for the forger by defendant bank, instead of *deposited* in the bank, and the Dauphin Deposit Trust Company, in the instant case, argues that this is an important distinction, and that it is the Tibby case that controls the present case; and further, that the Tibby case, in which the court held in favor of the bank, was not overruled by the Lindsley case. We cannot agree with Dauphin Deposit Trust Company's position. As far as the problem in the instant case is concerned, we can find no distinction between the *cashing* of a forged check and the *accepting* of such check for *deposit*, and, indeed, the courts make no such distinction. One of the cases quoted from and relied on by the court in Lindsley was Natl. Union Bank v. Miller Rubber Co., 148 Md. 449, 129 Atl. 688 (1925), which dealt with the *cashing* of a forged instrument. And then, too, without mentioning any distinction between the cases, the Lindsley case expressly overrules the Tibby case, and in so doing points out that in nearly all, if not all, of the jurisdictions where the question has arisen, the courts have criticized the Tibby decision, and have upheld suit by a payee against the bank that cashed or accepted for collection a check on which the payee's signature was forged.[1] Logic and reason would seem to indicate that if accepting a forged paper for collection is a conversion, certainly the cashing of such a paper would be too. In both instances, the collecting bank is certainly exercising dominion and control over the property of another.

In Land Title Bank & Trust Company v. Cheltenham National Bank, supra, where the checks in question were *cashed*, as distinguished from *deposited*, the court stated, at page 35:

[1] For a host of cases from other jurisdictions on this subject holding that a payee may recover directly against the collecting bank, see n.2, p. 395, of the Lindsley case.

"The applicable rule of law is so firmly settled that it needs no elaborate citation of authorities to support it. If a check is made payable to the order of a person named therein the absolute duty of a bank honoring the check is to pay only to that payee or according to his order, and no amount of care to avoid error will protect it from liability if it pays to a wrong person; it must ascertain and act upon the genuineness of the indorsement at its peril".

In 1954, the Uniform Commercial Code became effective in Pennsylvania. The Act of April 6, 1953, P. L. 3, as amended, 12A PS §1-101, et seq., and section 3-404, 12A PS §3-404, thereof provided:

"(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value".

It seems to us that this section of the code, as far as pertinent to the question before us in the instant case, does not change the rights or duties of the payee and the collecting bank. Our belief in this regard is strengthened by the Pennsylvania Bar Association Notes and the Uniform Commercial Code Comment, which follow 12A PS §3-404, both of which, in effect, indicate that this section of the code is in accord with section 23 of the Negotiable Instruments Law, and that the difference in wording is only for clarification.

There has not been called to our attention any express provision of the code concerning the liability to payees of collecting or check cashing banks, and our independent research has disclosed none,[2] and, there-

---

[2] It was pointed out in Stone & Webster Eng. Corp. v. First Natl. Bank & Trust Co., 345 Mass. 1, 184 N.E. 2d 358 (1962), that section 3-419 of the code which provides, "(1) An instrument is converted when . . . (c) it is paid on a forged indorsement", applies to the payor bank and not the accepting or cashing bank.

fore, the principles of law effective prior to the adoption of the code are applicable.[3]

In National Union Bank v. Miller Rubber Co., supra, a case relied on by the Pennsylvania Supreme Court in Lindsley, supra, it was said, at page 398 of 325 Pa.:

" 'Where, however, a collecting bank cashes a check on a forged endorsement, a different principle applies. There the collecting bank on the forged indorsement acquires no title whatever to the paper because the indorsement, its only source of title, is a nullity. It therefore is wrongfully in possession of the check and in equity and good conscience holds it for the payee. If, while in possession of it, it by means of the forged indorsement collects it, then it holds the proceeds of the collection in the same way for the payee, and that relationship creates a privity between it and the payee. And if the payee elects to ratify the collection of the check by the collecting bank he may recover from it the amount collected' ".

In an annotation beginning on page 670 of 100 ALR 2d (1965), the notewriter has collected the cases from some 30 jurisdictions, including Pennsylvania (more than half of which have adopted the Uniform Commercial Code) on the question with which we are here concerned, and the conclusion reached in that note, at page 672, is that:

"The rule is established by the great weight of authority that in the absence of negligence, laches, or estoppel, a payee or other check owner is entitled to recover against a collecting bank or any person, firm, or corporation cashing a check bearing a forged or unauthorized indorsement of the payee or other check

---

[3] Section 1-103 of the Uniform Commercial Code provides, "Unless displaced by the particular provisions of this Act, the principles of law and equity . . . shall supplement its provisions".

owner, and procuring payment thereof from the drawee of the check".

And, further, that:

"The reasoning on which these cases proceed can perhaps be summed up in the statement that one who cashes a check on a forged or unauthorized indorsement does so at his peril".

In accord, see 9 C.J.S. Banks & Banking §357 c. (1938), and 10 Am. Jur. 2d Banks 599, §632 (1963), where it was said:

"[T]he general rule established by nearly all courts is that a bank or other corporation which, or an individual who, has obtained possession of a check upon an unauthorized or forged indorsement of the payee's signature, and has collected the amount of the check from the drawee, is liable for the proceeds thereof to the payee or other owner, notwithstanding they have been paid to the person from whom the check was obtained, and notwithstanding that the payee's signature was forged by his employee or agent".

Relying on section 3-419 (3)[4] of the code and Stone. & Webster Eng. Corp. v. First Natl. Bank & Trust Co., supra, defendant contends that the rule of Lindsley's case has been modified by the code to the extent that defendant having paid on good faith the proceeds of these checks to the person presenting them, it is now relieved from liability. We do not understand the law to be changed in this manner by the code section referred to, and the Stone & Webster case appears to be inapposite.

---

[4] "Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion *or otherwise* to the true owner beyond the amount of any proceeds remaining in his hands". (Italics supplied).

Subsection 3 of section 3-419 is new, and according to the comment to the Uniform Commercial Code contained in Purdon's Pennsylvania Statutes Annotated following the code section in question, this subsection was intended to adopt the rule of decisions which have held that a *representative who deals* with a negotiable instrument for his *principal* in good faith is not liable for conversion or otherwise to the true owner except that he will be obliged to pay over any proceeds of the instrument remaining in his hands.

The leading case in Pennsylvania which is said to be in accord with this section of the code, and which was decided long before the code with this new section was adopted in Pennsylvania, is First National Bank of Blairstown v. Goldberg, 340 Pa. 337 (1941), in which it was held that there was no liability on a *broker* or *agent* who assisted another in the sale of stolen negotiable bonds, where all of the proceeds had been turned over to the principal, and the broker or agent had acted throughout innocently, and in good faith.

Since the adoption of the code, there have apparently been no judicial decisions interpreting this subsection; at least, we have found none, and none has been called to our attention and the texts refer to none.

It must be remembered that this subsection concerns a "representative". It is true that it is provided that "representative" shall include a depository or collecting bank, but the clear meaning is to include them when acting as "representatives". The code, at section 1-201 (35) defines "representative" as follows:

" 'Representative' includes an agent, an officer of a corporation or an association, and a trustee, executor or administrator of an estate, or any other person empowered to act for another".

The entire subsection speaks of something other than the negotiating or the honoring of a check when it re-

fers to the representative having "*dealt* with an instrument or its proceeds on behalf of one who was not the true owner". (Italics supplied).

In determining the intent of the legislative in adopting this subsection, we must assume that the legislature intended a reasonable result, and it would seem to be unreasonable to construe this subsection, as defendant would have us do, and limit the liability of the collecting bank in the face of other sections of the code which place the absolute liability ultimately on the check cashing bank when the payee's name is forged; this, because of the check cashing bank's warranties on the indorsements.[5]

As we construe this subsection, it refers to the type of transaction found in First National Bank of Blairstown v. Goldberg, supra, and not to the type in the instant case.

Even though this subsection should be held to apply here, it can give defendant no solace, for, as we view it, defendant still has the proceeds of all of the checks in its hands. When it purchased or cashed the forged checks drawn on other banks, it did so with its own money, and then, in putting them through for collection, it obtained from the drawee banks money which belongs to plaintiff. The same result is reached with the checks on which defendant is the drawee. After purchasing them with its own money, it charged the accounts of the drawers and now holds this money for plaintiff.

The Stone & Webster case, supra, is a suit by a *drawer* of a check against the collecting bank, and is clearly inapposite. The court there held, contrary to the majority rule (99 A. L. R. 2d 637 [1965]), that the *drawer* could not recover from the collecting bank for the reason that the drawer was not the holder of the

---

[5] See section 4-207 of the Uniform Commercial Code.

paper and had no right to the proceeds of its own check made payable to another. By way of dicta, the court pointed out that had the checks been *delivered* to the payee (they had been forged and cashed by the forger prior to delivery), defendant might have been liable for conversion to the *payee*, which is exactly the case at bar. Also by way of dicta, the court suggests that section 3-419(3) of the code "might have some bearing on the case". We cannot agree with defendant that this dicta is persuasive here. We must conclude, therefore, that defendant acquired no title whatever to the checks bearing the forged indorsement of the payee, and that the effect of the Lindsley case, supra, was not changed by the adoption of the Uniform Commercial Code, and that plaintiff has set forth a good cause of action in count no. 1.

We now turn our attention to count no. 2 of the complaint, which concerns checks drawn on *defendant* bank, but in all other respects identical with the checks with which we were concerned in count no. 1. Here, defendant is the payor (previously drawee) bank. The Uniform Commercial Code, in section 3-419(1)(c) is clear: "An instrument is converted when . . . (c) it is paid on a forged indorsement".

To whom is the liability for the conversion? Not, presumably, to the drawer of the check, for he is fully protected by his contract of deposit with the drawee bank. Liability for a conversion is to the true owner of the check, and the true owner is the payee, or one claiming under him. The true owner of the checks in this case is, of course, plaintiff, the payee.

In the comment to subsection 1(c), it is pointed out by the code commissioners that this subsection adopts the prevailing view of decisions which have held that although *payment* on a forged indorsement is not actually an *acceptance*, nevertheless, even though such payment is made in good faith, it is an exercise of

dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion.

A case in Pennsylvania holding to this view, prior to the Uniform Commercial Code, was Seventh National Bank v. Cook, 73 Pa. 483 (1873). There, the drawee bank, having paid a check on a forged indorsement of the payee, and having then charged the drawer's account with the amount of the check and having returned the cancelled check to the drawer, was held liable in assumpsit to the payee. The court spoke of the drawee bank as holding for the payee the amount of the check "under an implied promise to him to pay it on demand", the theory being that payment of the forged check was an acceptance of it. See also Byrne v. Dennis, 303 Pa. 72 (1931); Morris & Bailey Steel Co. v. Bank of Pittsburgh, 277 Pa. 81 (1923).

The general rule is stated, in 10 Am. Jur. 2d Banks 598, §631, to be that:

"A check drawn in favor of a particular payee or order is payable only to the actual payee or upon his genuine indorsement; if the drawee bank . . . pays upon a forged indorsement, it is not a payment in pursuance of authority depriving the true owner or payee of his right to recover the funds called for by the instrument. . . . So too, a bank paying a check upon the unauthorized indorsement of the payee becomes liable to the payee".

It is there further pointed out that:

"This recovery is not now regarded as resting upon the theory that the payment by the bank upon a forged or unauthorized indorsement and charging it against the drawer's account constitutes an acceptance of the check rendering the drawee liable thereon, but rather, recovery has been allowed in an action of conversion by the true payee or owner of the check. . . ."

It is also there pointed out that in some cases, the

recovery is allowed on the theory that the drawee bank is liable to the true payee in an action for money had and received.

We conclude that plaintiff, in the instant case, has set forth a good cause of action in count no. 2 of the complaint. Accordingly, the demurrer should be overruled.

The remaining question is whether the complaint is sufficiently specific. We conclude that it is. Defendant itself would be in a better position than plaintiff to determine who presented the checks to it for payment, and the manner of the forged indorsements would seem to be evidentiary, if material.

As to the name of the person or persons who allegedly intercepted the checks, if known to plaintiff, it is our judgment that good pleading would call for the inclusion of such name or names in the complaint, or if not known, then a statement of such lack of knowledge; but the omission of such information does not render the complaint so insufficient that a more specific complaint should be required. The material facts are set forth in a concise and summary form (Pennsylvania Rule of Civil Procedure 1019(a)), and adequately put defendant on notice of what it will be called upon to meet at the trial and adequately defines the issues: Goodrich-Am. §1019-1. Defendant, of course, now has the discovery proceedings available to help secure any appropriate information which it may require: Bonnyview Development, Inc. v. Lower Paxton Twp., 78 Dauph. 346 (1962); Catina v. Markley, 77 Dauph. 330 (1961).

For the reasons set forth in this opinion, we, therefore, enter the following

ORDER

And now, December 6, 1965, the preliminary objections to the complaint are severally overruled, and

defendant shall have the right to plead over within 20 days from the date of this order.

