HYDROFLO CORPORATION, A PENNSYLVANIA
CORPORATION, APPELLANT, V. FIRST NATIONAL BANK OF
OMAHA, APPELLEE.

349 N.W.2d 615

Filed April 20, 1984. No. 83-123.

C. L. Robinson of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellant.

Thomas J. Culhane of Erickson, Sederstrom,

Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Hydroflo Corporation, named as payee on a number of checks, brought this action against the First National Bank of Omaha as a collecting or depositary bank, to recover the amounts paid on those checks to a bank customer who had wrongfully endorsed the checks and had the proceeds deposited to his account.

The district court sustained the bank's demurrer to the third cause of action, money had and received, and directed verdicts in favor of the bank, at the close of plaintiff's case, upon the first (conversion), second (negligence), and fourth (Consumer Protection Act) causes of action, and dismissed the petition in its entirety. We affirm as to the Consumer Protection action, and reverse and remand for trial as to the other three causes of action.

Hydroflo, a small Pennsylvania corporation, in the fall of 1978 hired John L. Hearn as a sales manager to sell specialized pumps and feed systems which it manufactured. Hearn was allowed to obtain a telephone listing and a post office box in Omaha in the name of the company. His job was to solicit orders for pumps throughout the Midwest and forward the orders to Pennsylvania for acceptance. Later, he had control of an inventory of up to approximately 180 pumps, which he kept in his garage.

In September of 1979 Hearn opened a corporate checking account in the name of Hydroflo but without its knowledge, and furnished the bank with a signature card containing his signature. Although the bank requested a corporate resolution authorizing the account, none was ever received. According to bank procedure, a corporate resolution is not required in an instance such as this, although it is the

bank's practice to request the resolution. During the next 11 months, a total of $23,773.37 in checks payable to Hydroflo was deposited by Hearn into and withdrawn from this account before it was closed on August 22, 1980.

Hydroflo first learned of the secret account when a bank statement was forwarded to the corporation after Hearn terminated employment in July of 1980. In the meantime, Hearn had incorporated Hydroflo Corporation of Nebraska on April 15, 1980, and furnished the bank a copy of those articles of incorporation after the plaintiff requested a freeze on the corporate account on August 13, 1980.

Hydroflo assigns as error the dismissal of each cause of action. We will address each cause in the order presented by the plaintiff's petition.

At the outset, the bank insists that there is no competent proof that Hearn was not the intended payee and that Hydroflo did not have the necessary possession of the forged instruments to authorize it to bring this action. On the basis of the record and the inferences to be drawn from it, there is no merit to either contention.

The first cause of action alleged in the second amended petition was conversion. The bank in its amended answer alleged as its only defense that it had acted in good faith and in accordance with reasonable commercial standards. The bank's defense of reasonable commercial standards is essentially Neb. U.C.C. § 3-419(3) (Reissue 1980), a statutory defense which the code apparently recognized to limit the conversion liability of depositary and collecting banks.

Hydroflo argues at length in its brief that that particular subsection was never intended to and did not apply to collecting and depositary banks when cashing checks in the normal course of business. Section 3-419(3) provides as follows:

> Subject to the provisions of this act concerning restrictive indorsements a representative, in-

cluding a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

Following is a portion of the language of the Comment to the above section:

Subsection (3), which is new, is intended to adopt the rule of decisions which has held that a representative, such as a broker or depositary bank, who deals with a negotiable instrument for his principal in good faith is not liable to the true owner for conversion of the instrument or otherwise, except that he may be compelled to turn over to the true owner the instrument itself or any proceeds of the instrument remaining in his hands.

The bank does not address this issue in its brief.

This question has generated substantial controversy among the courts and commentators who have addressed it and who are often in agreement in their conclusions that there is neither commercial nor rational justification for construing § 3-419(3) as being applicable to depositary and collecting banks engaged in the normal check collection business. As a result, this subsection of § 3-419 has been simply ignored at times, applied reluctantly in a few cases, and most often evaded on a variety of theories.

In *Tubin v. Rabin*, 389 F. Supp. 787, 789-90 (N.D. Tex. 1974), we find this language:

In my opinion Section 3-419(3), when it refers to the representative having "dealt with an instrument or its proceeds on behalf of one not the true owner," is concerned with an entirely different transaction than the typical "honoring a check" transaction. *See*, Ervin v. Dauphin Deposit Trust Co., 3 UCC Rept. Serv. 31 (Penn.

Common Pleas Court, 1965). As one case reasoned, the U.C.C. comments to this section refer to a line of cases primarily involving defendants that had acted as investment brokers and had marketed negotiable securities, remitting the consideration to their customers. The relationship in those cases between the representative and their customers typified the true agency type, and therefore differed substantially from the impersonal debtor-creditor relationship established in the banking world. . . . Thus, it is this true agency situation rather than the typical bank transaction involved in this case that 3-419(3) appears to be addressed.

In *Ervin v. Dauphin Deposit Trust Co.*, 38 Pa. D. & C.2d 473, 482-83 (1965), 3 U.C.C. Rep. Serv. 311, 318-19 (Callaghan 1967), this ingenious argument is used:

It is true that it is provided that "representative" shall include a depository or collecting bank, but the clear meaning is to include them when acting as "representatives". The code, at section 1-201(35) defines "representative" as follows:

" 'Representative' includes an agent, an officer of a corporation or an association, and a trustee, executor or administrator of an estate, or any other person empowered to act for another".

The entire subsection speaks of something other than the negotiating or the honoring of a check when it refers to the representative having "*dealt* with an instrument or its proceeds on behalf of one who was not the true owner". (Italics supplied).

In determining the intent of the legislative [sic] in adopting this subsection, we must assume that the legislature intended a reasonable result, and it would seem to be unreasonable to construe this subsection, as defendant would have us do, and limit the liability of the collect-

ing bank in the face of other sections of the code which place the absolute liability ultimately on the check cashing bank when the payee's name is forged; this, because of the check cashing bank's warranties on the indorsements.

*Knesz v. Central Jersey Bank & Trust Co.*, 188 N.J. Super. 391, 457 A.2d 1162 (1982), *cert. granted* 93 N.J. 293, 460 A.2d 690 (1983), in a rather long opinion citing *Ervin v. Dauphin, supra*, and *Cooper v. Union Bank*, 9 Cal. 3d 371, 507 P.2d 609, 107 Cal. Rptr. 1 (1973), as well as various policy considerations, also held that a depositary or collecting bank, when engaged in the customary business of accepting checks for payment or ordinary collection, is not immunized from conversion action by the payee whose endorsement has been forged.

The holdings in the foregoing cases can perhaps best be summed up by this language from J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 15-4 at 593-94 (2d ed. 1980):

Perhaps those bankers whose hands were doubtless at work in the drafting of 3-419(3) got what they deserved. If the section be not dead it certainly is mortally wounded; one can only mourn that *Ervin* and *Cooper* inflicted fatal wounds with such little grace and that legislatures will doubtless not give it a decent burial for years to come, especially now that those cases have been followed in other jurisdictions. Although we deplore that mentality which leads a court to think it is completely free to disregard legislative language, we appreciate the strength of the policy arguments against the restrictions that the bankers presumably wrote into 3-419(3), and if we were in the legislature we would urge its modification.

We choose to be more faithful to the plain meaning of the language of the subsection, and hold that it does include depositary and collecting banks when engaged in the normal business of paying or collect-

ing ordinary checks. However, the immunity which they are to enjoy is limited to those cases where they act "in good faith and in accordance with the reasonable commercial standards." It is incumbent on a depositary bank seeking immunity to plead and prove those requirements as matters of affirmative defense. *Nat'l Surety Corp. v. Citizens State Bank,* 41 Colo. App. 580, 593 P.2d 362 (1978), *aff'd* 199 Colo. 497, 612 P.2d 70 (1980).

Whether or not a bank acted in a commercially reasonable manner is a question of fact. *Aetna Casualty and Surety Co. v. Hepler State Bank,* 6 Kan. App. 2d 543, 630 P.2d 721 (1981); *Continental Bank v. Wa-Ho Truck Brokerage,* 122 Ariz. 414, 595 P.2d 206 (1979); *Travelers Ins. Co. v. Jefferson Nat. Bank,* 404 So. 2d 1131 (Fla. App. 1981); *Holland America Cruises, N.V. v. Carver Federal Savings and Loan Association,* 60 A.D.2d 545, 400 N.Y.S.2d 64 (1977); *Thornton & Co. v. Gwinnett Bank &c. Co.,* 151 Ga. App. 641, 260 S.E.2d 765 (1979); *Casarez v. Garcia,* 99 N.M. 508, 660 P.2d 598 (1983).

The ordinary practice of the bank was to request a corporate resolution when opening a corporate account. Thomas Haller, second vice president, agreed there was no written requirement, for instance, that a corporate resolution be obtained, nevertheless it was the bank's practice to request it for its files. He stated the purpose of the corporate resolution was to check personal account signatures, and it was a formal authorization of the company itself as to who was authorized to sign checks, make deposits, draw loans, et cetera.

In a publication for commercial bankers, it is stated:

> In the case of the ordinary checking or commercial account, the bank is authorized to pay upon the order of the person whose signature is recorded on the signature cards kept for that purpose. The signature card constitutes the bank's contract with its depositor and contains

the terms that give the persons named on the card authority to act on behalf of the depositor in making deposits and withdrawals and signing instruments. . . . Having a corporation's authorization to let its agent draw checks within certain limits can shield the bank from liability, if the agent converts sums for his own account.

F. Beutel & M. Schroeder, Bank Officer's Handbook of Commercial Banking Law § 19-40 at 319 (5th ed. 1982). This publication, in referring to the duties of the bank in opening corporation accounts, states:

Corporation accounts can be opened in the name of the corporation only by properly constituted officers of the corporation. Although a corporation may be estopped from denying his authority, when it allows a person to carry on a continuous course of dealing, the safest way to open a corporation account is to receive a resolution of the board or a written authorization by a responsible officer under such a resolution for the opening of the account.

*Id.* § 19-35 at 318.

Although commercial reasonableness is usually a question of fact, several courts have held as a matter of law that it is commercially unreasonable for a bank to accept for deposit in an *individual* account a check made payable to a corporation, without first ascertaining, or at least inquiring, as to the authority of the depositor/endorser. *Aetna Casualty and Surety Co. v. Hepler State Bank, supra; Sherriff-Goslin Co v Cawood,* 91 Mich. App. 204, 283 N.W.2d 691 (1979); *Pargas, Inc. v. Estate of Taylor,* 416 So. 2d 1358 (La. App. 1982); *Belmar Trucking Corp. v. American Trust Co.,* 65 Misc. 2d 31, 316 N.Y.S.2d 247 (1970).

Also, in *National Bank v. Refrigerated & Co.,* 147 Ga. App. 240, 248 S.E.2d 496 (1978), a Georgia court determined a bank to be not in accordance with reasonable commercial standards when it failed to inquire to ascertain authority of a second corporation

(collection agency) to endorse and deposit the payee corporation's checks.

Thus, where reasonable minds may differ as to the conclusions or inferences to be drawn from the evidence, such issues must be submitted to the jury. *Prudential Ins. Co. v. Greco*, 211 Neb. 342, 318 N.W.2d 724 (1982). We hold that genuine questions of material fact exist on the issue of whether the bank acted in a commercially reasonable manner when it paid Hearn the money and that the bank has not established, as a matter of law, its defense.

The trial court directed a verdict in favor of the bank for the negligence cause of action because the court found as a matter of law the negligence of the defendant was not the proximate cause of the damage suffered by the plaintiff.

This court has held that the failure to abide by custom or ordinary practice is competent evidence of negligence. *McHenry v. First Nat. Bank*, 216 Neb. 581, 344 N.W.2d 652 (1984); *Wilbur v. Schweitzer Excavating Co.*, 181 Neb. 317, 148 N.W.2d 192 (1967); *O'Dell v. Goodsell*, 152 Neb. 290, 41 N.W.2d 123 (1950).

The bank contends it is not bound to anticipate criminal conduct; that the actual cause of Hydroflo's loss was the dishonesty of John L. Hearn, its employee; and that such action was an efficient intervening cause as a matter of law. The bank cites the recent case of *Travelers Indemnity Co. v. Center Bank*, 202 Neb. 294, 275 N.W.2d 73 (1979), as authority for its claim that an intervening cause is present. Hydroflo contends the question of whether Hearn's dishonesty was an intervening cause is a jury question.

In *Travelers Indemnity Co. v. Center Bank, supra*, this court held that (1) the claim that the bank failed to make reasonable and proper inquiry as to the authority of the maker's agent to deposit certain checks, without more, did not allege the violation of any duty owed by the bank to a maker, and, there-

fore, did not state a claim for negligence, and (2) it was clear from the facts as alleged in the petition that the bank's failure to make inquiry, even assuming that it had a duty to do so, did not proximately cause the maker's injury.

In *Travelers* the court relied on Neb. U.C.C. § 3-405 (Reissue 1971), the padded payroll rule, to make its decision. In the present case the checks were incoming checks rather than outgoing checks, and here § 3-405 is not applicable. According to J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 16-8 (2d ed. 1980), § 3-405 covers the imposter case, the padded payroll case, and the fictitious payee case, so that an employer should bear losses which result from employment of a cheating payroll clerk and that employers should carefully choose and supervise persons in such sensitive positions. Such is not the case here.

Also, in the *Travelers* decision, in the discussion of proximate cause, this court concluded that the mere claim that the bank failed to make reasonable inquiry was not sufficient to permit a conclusion that the *maker's* loss was a probable result of such failure. We went on to state, as dicta: "[W]ithout passing upon the matter, it may be said that the payee could have made such claim. Certainly that claim is not available to the maker." *Id.* at 300, 275 N.W.2d at 77. The present situation is one where the payee is making the claim.

Where evidence is conflicting on the question of proximate cause, the question is ordinarily one for the trier of facts. *Brown v. State*, 205 Neb. 332, 287 N.W.2d 676 (1980).

"If the original negligence is of a character which, according to the usual experience of mankind, is liable to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result of the original negligence."

*Driekosen v. Black, Sivalls & Bryson*, 158 Neb. 531, 537, 64 N.W.2d 88, 92 (1954). Generally, the question of whether there has been an intervening cause eliminating negligence of a defendant as a proximate cause is for the jury. *Libbey-Owens Ford Glass Co. v. L & M Paper Co.*, 189 Neb. 792, 205 N.W.2d 523 (1973).

It is our judgment that the issues of negligence, contributory negligence, and proximate cause should have been submitted to the jury, with appropriate instructions.

The third cause of action pleaded was money had and received. Before adoption of the Uniform Commercial Code, this claim would seem to be applicable to the alleged facts. In *Estate of Devries v. Hawkins*, 70 Neb. 656, 97 N.W. 792 (1903), this court held that whenever one person has money to which in equity and good conscience another is entitled, the law creates a promise by the former to pay it to the latter, and the obligation may be enforced by assumpsit. Neb. U.C.C. § 1-103 (Reissue 1980) states, unless displaced by the particular provisions of this act, the principles of law and equity shall supplement its provisions.

Following this reasoning, the Colorado court in *Nat'l Surety Corp. v. Citizens State Bank*, 41 Colo. App. 580, 583, 593 P.2d 362, 364-65 (1978), *aff'd* 199 Colo. 497, 612 P.2d 70 (1980), concluded that "[a]s no mention of this claim for recovery is made in the U.C.C., we conclude that the claim for money had and received is still viable."

However, the bank argues that in order to recover for money had and received it must be shown that to fail to permit recovery would allow it, the bank, to be unjustly enriched. *Soderlin v. Marquette National Bank*, 214 Minn. 408, 8 N.W.2d 331 (1943). The bank had paid out the entire proceeds of the checks by cash and credit, and therefore, it argues, when it received from the drawee banks only the amounts which it had disbursed, it was not unjustly enriched.

However, it seems that that argument misses the point. What the bank has done here, if Hydroflo's position is correct, is to wrongfully pay out its own money on the fraudulently endorsed instruments, and then has restored its position with the proceeds of the checks when finally collected. In *Cooper v. Union Bank*, 9 Cal. 3d 371, 378, 507 P.2d 609, 614, 107 Cal. Rptr. 1, 6 (1973), the court said:

> Again resorting to general banking theory, we find that the amounts a collecting bank remits to a person who transfers to the bank a check bearing a forged indorsement do not constitute the proceeds of the instrument. This result is quite clear in the case of an instrument cashed over the counter. At the time the bank takes such an instrument it has obviously not made any prior collection and, thus, has nothing that could be considered proceeds. The money paid over the counter is, consequently, the bank's own money. Upon collection of the instrument, the proceeds become merged with the bank's general funds and are therefore retained by the bank.

Hydroflo did state a cause of action against the bank, and the demurrer should not have been sustained. On trial, however, the bank is entitled to interpose the defenses of "good faith" and "reasonable commercial standards."

Hydroflo contends in its fourth cause of action that the bank's committing a conversion and acting in a commercially unreasonable manner constituted unfair or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 et seq. (Reissue 1978). However, § 59-1617 provides in part that "[n]othing in sections 59-1601 to 59-1622 shall apply to actions or transactions . . . regulated under . . . any other regulatory body or officer acting under statutory authority of this state . . . ."

In *McCaul v. American Savings Co.*, 213 Neb. 841, 331 N.W.2d 795 (1983), this court held that an install-

ment loan by an industrial loan and investment company, regulated by the Nebraska Department of Banking and Finance, is exempt from the Consumer Protection Act.

The specific issue in this case is the alleged failure of the bank to require a corporate resolution in opening a corporate account even though the bank's customary and standard practice was to request a resolution.

Under the provisions of the Banking Act, Neb. Rev. Stat. §§ 8-101 et seq. (Reissue 1977), the Department of Banking and Finance has general supervision and control over banks and other financial institutions. In particular, "The director shall have charge of and full supervision over the examination of banks . . . *and shall constructively aid banks in maintaining proper banking standards and efficiency.*" (Emphasis supplied.) § 8-103.

Under the provisions of §§ 8-102 and 8-103 the Department of Banking and Finance is given broad authority over proper banking standards, and since the requirements for opening corporate accounts are governed by banking standards indirectly approved by the Department of Banking and Finance, the practice of opening accounts is excluded from the terms of the Consumer Protection Act, §§ 59-1601 et seq. The dismissal of this cause of action was correct.

The judgment of the district court is affirmed in part and in part reversed and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.