NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0033n.06

No. 16-2224

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 18, 2018
DEBORAH S. HUNT, Clerk

KURT MIRANDETTE,                              )
                                             )
         Plaintiff-Appellant,                )
                                             )
v.                                           )    ON APPEAL FROM THE
                                             )    UNITED STATES
                                             )    DISTRICT COURT FOR
NELNET, INC., a Nebraska Corp.; NELNET       )    THE WESTERN DISTRICT
SERVICING, LLC, a Nebraska Limited Liability )    OF MICHIGAN
Co.,                                         )
                                             )
         Defendants-Appellees.               )

BEFORE:  SUHRHEINRICH, WHITE, and STRANCH, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Kurt Mirandette appeals the dismissal for failure

to state a claim of his diversity putative class action against Nebraska-based businesses Nelnet,

Inc., and Nelnet Servicing, LLC.  We reverse on the breach-of-contract claim and affirm on the

Nebraska state-law claims.

**I.**

Mirandette's complaint alleges that Defendants, who are among the nation's largest

student-loan lenders and servicers, manipulate the date on which they credit student-loan

payments, often crediting his daughter's student loan account, on which he is a co-borrower and

makes all the payments, ten to thirty days after he mails monthly checks, resulting in the

wrongful accrual of interest and late fees.  Mirandette alleges that these practices violate

Nebraska's Consumer Protection Act (CPA), Neb. Rev. Stat. Ann. § 59-1602, and Nebraska's

Uniform Deceptive Trade Practices Act (UDTPA), Neb. Rev. Stat. Ann. § 87-302(a)(15), and

constitute a breach of the Master Promissory Note (MPN), a standardized form[1] he and his daughter signed to obtain the loan. The complaint further alleges that every student-loan borrower must sign an MPN, which does not define "pay," "paid," "Payment Date," or "Effective Date," or address what it means to make a payment. PID 8. Defendants moved to dismiss Mirandette's complaint under Fed. R. Civ. P. 12(b)(6), arguing that his CPA claim failed under an express statutory exemption, his UDTPA claim was time barred, and he failed to state a breach-of-contract claim for reasons including that the MPN did not obligate Defendants to credit payments as of a certain date. The district court granted Defendants' motion and dismissed all Mirandette's claims.

## II.

We review de novo the district court's dismissal under Fed. R. Civ. P. 12(b)(6), accepting as true well-pleaded factual allegations in Mirandette's complaint. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). We also review de novo the district court's interpretation of state law in this diversity case. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *see also Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2006).

### A. CONSUMER PROTECTION ACT CLAIM

Nebraska's CPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

---

[1] Although the parties agree that the MPN is a standardized form, neither party provides further explanation. We may take judicial notice that the standardized Federal Family Education Loan (FFEL) MPN is drafted by the Department of Education (DOE):

> Starting on January 1, 1994, all FFELs use a master promissory note (MPN) that is drafted by the United States Department of Education . . . . [I]n 2007 the MPN language was codified in the FFEL regulations [citing 34 C.F.R. § 682.209(g).]

National Consumer Law Center, Consumer Credit and Sales Legal Practice Series, Student Loan Law (5th ed.) § 13.8.4.1.

"The CPA's scope is limited to 'the sale of assets or services and any commerce *directly or indirectly* affecting the people of the State of Nebraska.'" *Eicher v. Mid. Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008) (citing Neb. Rev. Stat. Ann. § 59–1601(2) (emphasis added)). The CPA applies to unfair or deceptive practices that affect the "public interest." *See Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141 (Neb. 2000). However, the CPA exempts from its coverage any allegedly unfair or deceptive "actions or transactions otherwise permitted, prohibited, or regulated under laws administered by . . . any . . . regulatory body or officer acting under statutory authority of this state or the United States." Neb. Rev. Stat. Ann. § 59-1617(1).[2]

The parties agree that the Department of Education (DOE) and Consumer Financial Protection Bureau (CFPB) have regulatory oversight of loan servicers. DOE and CFPB oversee lenders as well. The parties also agree that there are no regulations governing the specific conduct Mirandette alleges Defendants engage in: delaying or manipulating the date it credits installment loan payments made by paper check. PID 432-37/Dist. Ct. Op.

---

[2] The CPA exemption provides in pertinent part:

> (1) Except as provided in subsection (2) of this section, the Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of Insurance, the Public Service Commission, the Federal Energy Regulatory Commission, or any other regulatory body or officer acting under statutory authority of this state or the United States . . . .
>
> (2) Actions and transactions prohibited or regulated under the laws administered by the Director of Insurance shall be subject to section 59-1602 and all statutes which provide for the implementation and enforcement of section 59-1602. Actions and transactions prohibited or regulated under the laws administered by the Board of Funeral Directing and Embalming or administered by the Department of Agriculture and actions and transactions relating to loan brokers which are prohibited or regulated pursuant to sections 45-189 to 45-191.11 and administered by the Department of Banking and Finance shall be subject to the Consumer Protection Act.
>
> No penalty or remedy shall result from a violation of the Consumer Protection Act except as expressly provided in such act.

Neb. Rev. Stat. Ann. § 59-1617.

In *Kuntzelman v. Avco Financial Services of Nebraska, Inc.*, 291 N.W.2d 705, 706 (Neb. 1980), the Nebraska Supreme Court considered a CPA claim in which the conduct at issue was addressed by legislation only after suit had been filed. The Nebraska Supreme Court applied the exemption to conduct that had occurred before the new legislation, cautioning that even before the legislation the conduct complained of had been "*subject* to regulation," although not yet regulated. *Id.* at 708 (emphasis added). This principle was reaffirmed in *Hydroflo Corp. v. First National Bank of Omaha*, 349 N.W.2d 615, 622 (Neb. 1984), (holding that the Department of Banking and Finance's authority to oversee proper banking standards exempted a bank from CPA liability on a claim that the bank failed to properly require a corporate resolution upon opening a corporate account), and *Wrede v. Exchange Bank of Gibbons*, 531 N.W.2d 523, 529–30 (Neb. 1995) (holding that where "the very act of making a loan [is] regulated" by an outside agency, the lender's conduct in making that loan is exempt from CPA liability).

Applying the *Kuntzelman* rule to this case, Defendants are exempt from CPA liability. The DOE has considerable regulatory authority over student loans. The Secretary of Education is given broad power to regulate under the Federal Family Educational Loan Program, *see* 20 U.S.C. § 1082(a)(1), and has regulated this area heavily. Indeed, the DOE drafted the MPN at issue here and has regulated with regard to borrower payments, *see, e.g.*, 34 C.F.R. § 682.209 (outlining repayment procedures). This is sufficient to trigger the CPA exemption provision. *See* Neb. Rev. Stat. Ann. § 59-1617. Thus, we agree with the district court that Nebraska courts would deem Mirandette's claim exempt under the CPA and we affirm the dismissal of this claim.

## B. UNIFORM DECEPTIVE TRADE PRACTICES ACT CLAIM

Nebraska's UDTPA, Neb. Rev. Stat. Ann. §§ 87–301 to 87–306, is intended to provide "protection from deception for both consumers and competitors." *Richdale Dev. Co. v. McNeil Co.*, 508 N.W.2d 853, 860 (Neb. 1993).

Mirandette's complaint alleges that Defendants engaged in deceptive acts and practices that harm its customers and increase interest payments and late fees through intentionally slow or ineffective payment processing. As clarified in Mirandette's response to Defendants' motion to dismiss, he relies on UDTPA subsection (a)(16)(i), which makes it a deceptive trade practice for any person in the course of his business to use any scheme or device to defraud by means of "obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises." Neb. Rev. Stat. Ann. § 87-302(a)(16)(i).[3]

On appeal, Defendants argue that the UDTPA "does not offer the type of relief sought by Mirandette's complaint." Appellee Br. 51. However, Mirandette conceded below that only equitable relief is available under the UDTPA, *see Reinbrecht v. Walgreen Co.*, 742 N.W.2d 243, 247 (Neb. Ct. App. 2007) ("By its own terms, § 87–303(a) provides only for equitable relief consistent with general principles of equity . . . . § 87–303, does not provide a private right of action for damages" (citation omitted)[4], and pointed out, correctly, that his complaint sought such relief. PID 299.

---

[3] Section (a)(16)(i) provides:

> (a)  A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:
>
> (16) Uses any scheme or device to defraud by means of:
>
>  (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises.

[4] We observe that § 87-303(d) provides, "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state."

The district court concluded that regardless of the relief sought, Mirandette's UDTPA claim fails because it is barred by the four-year limitations period, which runs from the time of "the purchase of *goods or services*." Neb. Rev. Stat. § 87-303.10 (emphasis added).

Mirandette cites no Nebraska state-court cases, and we have found none, applying the UDTPA to loan payments or suggesting that loan servicing constitutes a good or service; thus it is not clear that the UDTPA applies to loan servicing at all and, if it does, whether its statute of limitations would run from the signing of the loan agreement, as Defendants assert, or from each monthly payment made on the loan, as Mirandette asserts. But the conduct proscribed by the UDTPA suggests it is not applicable to Mirandette's claim. The Act proscribes an enumerated list of conduct that generally covers misrepresentations in sales; none of the enumerated practices describe the late crediting of loan payments. More important, Mirandette has identified no false or fraudulent promise or representation by Defendants regarding the crediting of payments, or the dates the payments were received.

Because the alleged violation of the UDTPA does not fall under any enumerated practice, we affirm the district court's dismissal of this claim.

## C. BREACH OF CONTRACT CLAIM

Mirandette argued below that the MPN was either silent regarding when the servicer must credit his payments or was ambiguous as to that term. He advanced two breach-of-contract theories: 1) the MPN should be read in conjunction with the "mailbox rule," which provides that a payment is made when it is placed in the mail; and 2) the court should interpret "payment" under the MPN to occur on Defendants' receipt of his checks.[5] PID 6-8, 4. Under the first

---

[5] Contrary to Defendants' argument, Mirandette did not waive this argument. Although UCC Article 3 was not cited in support of the argument, Mirandette's complaint clearly asserts that payment should be credited upon receipt.

theory, Mirandette argued that Defendants breached the MPN by failing to credit his payments on the date he mailed them. Under the second theory, Mirandette argued that Defendants should credit his checks on receipt. The district court addressed the first theory, but not the second.

Defendants present two arguments in support of the district court's dismissal: 1) that they could not have breached the MPN because the MPN is a contract between Mirandette and a separate lender; and 2) even if they are bound by the MPN, there is no provision obligating them to credit Mirandette's payments as of a certain date. Both arguments fail.

In essence, Defendants argue that a third-party lender contracted with Mirandette to provide a loan. Then, instead of dealing with the service requirements of that loan, the lender contracted with Defendants and delegated those duties to Defendants in exchange for a servicing fee. Accepting Mirandette's well-pleaded factual allegations as true, as we must, *Winget*, 510 F.3d at 581, his allegation that "Defendants are a signatory to Plaintiff's MPN," is sufficient to withstand judgment on the pleadings on the issue of Defendants' involvement. PID 14; *see also* PID 335.[6] Further, Defendants have not shown that they have no obligation to the debtor arising from their acceptance of the asserted delegation of the duty to service the loan.[7]

Defendants' second argument, that they are under no obligation to credit Mirandette's payments at any particular time because there is no term describing when they must credit Mirandette's payments, also fails.

---

[6] On the cover page of the MPN form that Mirandette completed and he and his daughter signed, Mirandette filled in the blank under "Lender Name" with "Nelnet." Standardized language on the cover page includes: "In this MPN, 'lender' refers to, and this MPN benefits, the original lender and its successors and assigns, including any subsequent holder of this MPN." PID 335.

[7] Under Defendants' reading, loan borrowers would have no contract remedies if loan servicers overcharge them (aside, perhaps, from not paying, facing suit by the servicer, and raising an affirmative defense–a risky endeavor).

Although the MPN does not specify when payments must be credited, it does require the lender to do at least three things: "My lender must provide me with a choice of repayment plans consistent with the provisions of the [Higher Education] Act"; "The lender will provide me with a repayment schedule that identifies my payment amounts and due dates"; and "If I do not specify which loan(s) I am prepaying, the lender will determine how to apply the prepayment in accordance with the Act." PID 303. The MPN and related disclosures also set other restrictions on the lender, including subjecting the lender to the Higher Education Act and DOE regulations and specifying the applicable interest rate. PID 303, 311. Further, Defendants' reading is contradicted by the text of the MPN, which states that: "Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses *in addition to those stated in this MPN*." PID 303 (emphasis added). More fundamentally, Defendants' interpretation of the MPN is untenable. Under their logic, Defendants are entitled to withhold crediting Mirandette's account indefinitely, thus allowing Defendants to charge interest on the full principal for the entire duration of the loan. Defendants' reading would suggest that even if Mirandette walked into their office and paid his monthly installments in cash, Defendants still would not be required to credit his account until they chose to do so. Such an absurdity cannot have been intended by the parties signing this contract (or, for that matter, by the DOE when it drafted the MPN). Rather, the more natural reading of the contract is that when Mirandette fulfills his obligation to make timely payments, Defendants have the reciprocal obligation to acknowledge those payments by crediting his daughter's account. The question is when Defendants must credit those payments.

### 1. MAILBOX RULE AS GAP FILLER

Mirandette's first breach-of-contract theory is that the "mailbox rule" should govern the meaning of the term "payment," which is undefined in the MPN. Appellant Br. 6. The district court rejected this theory, determining that the mailbox rule "is not a means of filling a gap in a contract" and "addresses issues concerning *payment*, not a creditor's obligation to apply or post a payment at a certain time." PID 440. The district court noted that Mirandette cited no case "applying the mailbox rule to impose an obligation on a creditor to post a payment as of the date the borrower deposits it in the mail," and "no borrower could reasonably believe that a creditor is *obligated* to credit the borrower's payment at the time of mailing, when the creditor does not even possess the payment instrument by which it could convert the payment into actual funds." PID 440.

The Nebraska Supreme Court looks to the Restatement (Second) of Contracts in interpreting contracts. *See, e.g.*, *Turbines Ltd. v. Transupport, Inc.*, 825 N.W.2d 767, 777 (Neb. 2013); *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 749 (Neb. 2011) ("The Restatement (Second) of Contracts provides a default rule for the omission of terms necessary to determining the parties' obligations under an enforceable contract: 'When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.'") (quoting Restatement (Second) of Contracts § 204 (1981)).

Neither party challenges the formation of a contract and neither claims that the contract expressly provides when payment is made or payments are to be credited. It is not entirely clear that we are presented with a situation involving an omitted term, rather than an issue of

interpretation. In any event, Mirandette's argument that the district court erred in rejecting the "mailbox rule" as either a gap filler or the proper interpretation of the term "pay" or "payment" is unsupported by case law suggesting the Nebraska courts would supply such a term or find it in the contract. Thus, we agree with the district court's determination not to apply the mailbox rule.

## 2. DEFENDANTS SHOULD CREDIT PAYMENTS AS OF THE DATE RECEIVED

Mirandette's second breach-of-contract theory is that Defendants should credit his payments upon receipt. Although he failed to cite UCC § 3-310, Mirandette nevertheless alleged a "payment-upon-receipt" theory consistent with that provision, and he argued below that the date Defendants received his checks should be the date his account is credited. *See* Compl., PID 6-8, ¶¶ 31-43 (outlining the payment-upon-receipt argument); *id.* PID 4, ¶ 79 (incorporating paragraphs 31-43 into his breach-of-contract claim). The district court did not address this aspect of Mirandette's breach-of-contract claim. We therefore remand.

UCC § 3-310 states that the delivery of a check marks the date of payment. UCC § 3-310, cmt. 1 (cross-referencing the previous UCC § 3-802, which clarified that a debt is considered repaid when a check is delivered). Since we are remanding for the district court to address Mirandette's payment-upon-receipt theory, we note that Nebraska's commercial code includes a provision containing language identical to UCC § 3-310. *See* Neb. Rev. Stat. UCC § 3-310. Because the MPN states that "[a]pplicable state law, except as preempted by federal law, may provide for certain borrower rights," PID 303, Nebraska's parallel UCC provision may indeed be relevant. Neb. Rev. Stat. UCC § 3-310(a)-(b).

**III.**

For the reasons stated, we AFFIRM the dismissal of the Nebraska state-law claims, REVERSE the dismissal of the breach of contract claim and REMAND for the district court to consider Mirandette's payment-upon-receipt breach-of-contract theory.