**Robert L. KEENER, Appellant,**

**v.**

**Calvin WALKER, Chairman, et al., Trustees
of the Rodman Local #201 Wel-
fare Fund, Appellees.**

Nos. 4500, 4542.

District of Columbia Court of Appeals.

Argued March 24, 1969.

Decided Sept. 17, 1969.

Jack H. Olender, Washington, D. C., for appellant.

Martin F. O'Donoghue, Jr., Washington, D. C., for appellees. Patrick C. O'Donoghue, Washington, D. C., also entered an appearance for appellees.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

These are consolidated appeals from summary judgments rendered in favor of the Trustees of the Rodman Local #201 Welfare Fund. Appellant was a member of the union and entitled to benefits provided by the Welfare Fund. The trust instrument empowers the Trustees to create a schedule of medical benefits and to prescribe eligibility for participation in the Fund and its benefits. Medical benefits are extended to eligible dependents of union members, including a member's "lawful wife."

Appellant was married to Agnes Totten in 1941. They separated during 1952 or 1953 because of incompatibility and Agnes filed a complaint for absolute divorce. This complaint was dismissed in 1955 for want of prosecution.

Appellant lived with one Louise Anderson as husband and wife from 1956 until Louise's death in 1963. During this period, appellant represented Louise as his wife to the Welfare Fund and claimed medical benefits for her. As a result, the Welfare Fund disbursed medical benefits for her in the amount of $6,120.30 in the years 1960 and 1963.

Shortly after Louise's death appellant and his lawful wife, Agnes, resumed living together. Some three months thereafter

appellant filed a new information card with the Welfare Fund showing Agnes M. Keener as his wife. In so doing, he inserted the date of September 12, 1963, five days subsequent to the death of his alleged wife, Louise, as being the date of his marriage to Agnes. An investigation by the Welfare Fund ensued as a result of these developments. When it became established that appellant had not been divorced from his wife, Agnes, the Welfare Fund demanded restitution from appellant of the amounts paid as medical benefits for Louise upon his representations that she was his wife. Upon his refusal, suit was filed to obtain restitution of the total amount paid as the result of appellant's allegedly fraudulent misrepresentations. Appellant, in turn, filed two counterclaims. The first counterclaim was for libel and slander by the plaintiff Trustees stemming principally from statements allegedly made and published by them that appellant had defrauded the Welfare Fund. The second counterclaim was for medical benefits withheld from him for 1963 and 1964 by the plaintiff Trustees of the Welfare Fund.

Appellees were permitted to file an amendment to the complaint after a hearing. This amendment added a count to the complaint which set forth an additional theory for restitution of the sums paid as medical benefits for Louise, namely, that these medical expenses were paid mistakenly by the Welfare Fund due to the misrepresentations of appellant. It differed essentially from the original complaint by omitting the charge that the medical benefits were made as a result of a fraud perpetrated by appellant, asserting instead that they were made "mistakenly" because of appellant's "misrepresentations."

After depositions were taken of appellant, the Chairman of the Trustees of the Welfare Fund and Agnes Keener, appellees filed a motion for summary judgment, which was granted after a hearing. From the undisputed facts the court found that (a) between 1960 and 1963 the Welfare Fund erroneously paid out $6,130.50 [1] on appellant's representations that Louise was his wife and thus an eligible dependent of appellant for payment of medical and hospital expenses, (b) that Louise was not an eligible beneficiary for such benefits, (c) when the Welfare Fund ascertained that appellant was at all times material lawfully married to Agnes M. Keener, it determined the Louise was ineligible for benefits under its plan, and (d) the Trustees of the Welfare Fund thereupon made demand upon appellant for repayment of the sums erroneously paid, without success. The court concluded that there was no genuine issue of material fact; that appellant was paid $6,130.50 for medical benefits to a person he represented mistakenly to be an eligible dependent; and that the Trustees of the Welfare Fund were entitled to recover the money thus paid, with interest, less any sum recouped from appellant in the interim.

Appellant contends the trial court erred in granting relief to appellees as some, if not all, of their claims were barred either by the three year statute of limitations or by laches. He argues that it follows from the court's finding that the payments in issue were made by appellees between the years 1960 and 1963, that some claims must have been barred by the statute since the original complaint was filed on December 9, 1964, the motion to amend the complaint was filed on November 15, 1965, and the amendment was granted on November 15, 1965. No matter when the claim is considered to have been first asserted, says appellant, some of the claims necessarily must have been barred. He contends, further, that since the claims for separate, mistaken payments are not designated as made within the limitations period, the

1. This amount is $10.20 in excess of the amount stated in the complaint. No contention is made concerning this apparent discrepancy, however, and we do not consider it.

trial court's judgment for the total of the payments made was without foundation.

■ We disagree. It is evident that the Trustees of the Welfare Fund made these payments as a result of appellant's misrepresentations. It is undisputed that Louise was not in law his wife as he was at all times material legally married to Agnes Keener. This being so, the Trustees are clearly entitled to restitution. The question is whether they are barred from restitution, in whole or part, by the statute of limitations.

This court has held that where there is misrepresentation, even though innocent, the statute does not begin to run until its discovery. Hodde v. Chaney, D.C.Mun. App., 139 A.2d 510 (1958); [2] cf. Stone v. Board of Examiners and Registrars of Architects, D.C.Mun.App., 126 A.2d 157 (1956).

Appellant relies mistakenly upon Adrian v. American Security and Trust Company, D.C.App., 211 A.2d 771 (1965), for the proposition that the statute of limitations begins to run from the date a wrongful act is committed. There, the bank issued to the appellant its Treasurers check for $7,000 to close the account. This check was later paid by the bank, though not endorsed by appellant. Upon discovering some five years later that the check was missing, demand was made upon the bank for payment and the bank refused. This court held that since there was no conduct by the bank designed to conceal the mistake or to deceive appellant, the statute started to run when the wrongful act was in fact committed.

*Adrian* is distinguishable, however, because it involved a simple mistake which resulted in erroneous payments on a party's behalf rather than a misrepresentation by a party who is seeking to profit from his misstatement.

■ Appellees acted with dispatch when suspicion was aroused. The statute began to run when they discovered appellant's misrepresentation and suit was filed well within the statutory period.[3]

■ Appellant next contends the trial court erred in permitting appellees to amend their complaint, since the amendment set forth an entirely new cause of action after the statute of limitations had run.

This is not correct. The amendment permitted by the court merely introduced a different theory for the same cause of action by charging "honest misrepresentation" rather than "fraud." Appellant relies upon Nunnally v. Wilder, 117 U.S.App.D. C. 377, 330 F.2d 843 (1964), but there the court held the amendment constituted new matter unconnected with the original complaint and presented a new cause of action. No such situation exists here and the amendment was permissible. *See* Ct.Gen. Sess.Civ.R. 15.

Appellant also argues that it was error to grant summary judgment to appellees on his first counterclaim for libel and slander. This counterclaim was based principally upon an assertion that the Chairman of the Trustees of the Welfare Fund stated in the presence of several people that appellant "committed a fraud" in obtaining the medical benefits in issue here; and that as a result, appellant has been "laid off" a number of jobs without cause.

Our review of the record shows that the depositions of appellant and others do not support his assertions on appeal. In testifying, appellant was unable to state specifically that he had been accused of committing a fraud. Consequently, apart

---

2. Though this case involved real property located in Maryland and representations made there, the law in this jurisdiction is not different.

3. There is no merit to the allegation of laches.

from other serious legal deficiencies apparent in this counterclaim, appellant failed to make an adequate showing of slander (or libel) and the trial court correctly granted summary judgment in appellees' favor on the counterclaim.

Finally, we see no error in the grant of summary judgment for appellees on appellant's second counterclaim. This counterclaim sought recovery of benefits withheld from appellant in 1963 and 1964 on account of the claim of the Welfare Fund for restitution of the sums paid due to his misrepresentations concerning his alleged wife. The trial court properly considered the sum withheld to be a recoupment by appellees and deducted this sum from the amount of the judgment sought by them. There is no merit to this contention.[4]

Accordingly, the judgments are

Affirmed.

4. We have reviewed appellant's remaining contentions and see no error warranting reversal. The determination of the Trustees that appellant's alleged wife, Louise, was not an eligible beneficiary of the Welfare Fund was reasonable; and she was not otherwise entitled to such benefits.