PEOPLE, *for use and benefit of* MICHIGAN PUBLIC SCHOOL EMPLOYEES' RETIREMENT SYSTEM, *v.* MICHIGAN NATIONAL BANK

1. Bills and Notes—Forged Indorsement—Guarantee of Indorsement—Impostor Rule.

   Generally, a forged indorsement is ineffective and a bank is liable to a person who pays an item with a forged indorsement bearing the bank's guarantee of prior indorsements, but a bank is not liable if the person paying the item intended to pay the physical person who poses as someone else and forges the indorsement, that is, an impostor (CL 1948, § 487.604).

2. Bills and Notes—Impostor Rule—Intention.

   Application of the impostor rule to later instruments bearing forged indorsements of the payee in a series of instruments, in which the earlier instruments were indorsed by the payee whom the drawer intended to be paid, requires proof of a change of intention on the part of the drawer to an intention that the forger be the person paid.

3. Bills and Notes—Forged Indorsement—Impostor.

   A change of intention on the part of a drawer of a series of instruments as to the person to be paid cannot be established simply by showing that a person who forged the payee's

---

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 11 Am Jur 2d, Bills and Notes § 331.
[4] 11 Am Jur 2d, Bills and Notes § 386.
[5] 34 Am Jur, Limitations of Actions §§ 392, 393.
[6] 12 Am Jur 2d, Bills and Notes § 1035 *et seq.*

indorsements on items issued to a retiree who, unknown to the drawer, had died, also submitted to the drawer forged annual affidavits of identity, where it is not claimed that there was anything in the affidavits of identity which should have alerted the drawer to the fact that the person who signed them was not the retiree and that the drawer was now dealing with someone else.

4. BILLS AND NOTES — FORGED INDORSEMENTS — REPETITIOUS FORGERIES — NEGLIGENCE.

Those who draw and circulate commercial paper do not have an affirmative duty to institute procedures for the detection of repetitious forgeries, and failure to institute such procedures is not negligence which would operate to prevent recovery from a bank taking instruments with forged indorsements.

5. LIMITATION OF ACTIONS—STATE—PERSONAL ACTION.

The State's right to maintain a personal action is subject to pertinent general statutes of limitations (CL 1948, § 609.28; MCLA § 600.5821[3]).

6. BILLS AND NOTES—FORGED INDORSEMENTS—LIMITATION OF ACTIONS.

Statute of limitations on a drawer's cause of action against a collecting bank for amounts paid on forged indorsements starts to run when the items are paid by the drawer, not when the forgeries are discovered (CLS 1956, § 609.13).

Appeal from Ingham, Sam Street Hughes, J. Submitted Division 2 March 5, 1969, at Lansing. (Docket No. 5,713.) Decided October 30, 1969.

Complaint by the State of Michigan against Michigan National Bank, a National Banking Association, Citizens Commercial & Savings Bank, a Michigan banking corporation, and Genesee Merchants Bank & Trust Co., a Michigan banking corporation, for reimbursement of money paid to the banks on forged indorsements. Summary judgment for plaintiff. Defendant Michigan National Bank appeals. Affirmed in part and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky, Francis J. Carrier,* and *Gerald F. Young,* Assistant Attorneys General, for the people.

*Fraser, Trebilcock, Davis & Foster (John J. Dood,* of counsel), for defendant.

Before: J. H. GILLIS, P. J., and LEVIN and BRONSON, JJ.

LEVIN, J. The defendant appeals a summary judgment for the plaintiff. The facts in this case parallel those in *People, for use and benefit of State Employees Retirement System,* v. *Traverse City State Bank* (1968), 9 Mich App 639. There, as here, a retired state employee, who was entitled to receive, and who was monthly paid, a retirement benefit, died. The state, unaware of his death, continued to send warrants for the monthly benefit. Someone else (in *Traverse City* a widow, in this case a daughter) forged the retiree's name and obtained the proceeds from a local merchant or bank. The warrants were ultimately paid by the state treasurer. In both cases the state learned of the death of the retiree for the first time after the forger's death and then commenced an action against the banks that had submitted the warrants to recover the amounts paid by the state on the forged indorsements.

In *Traverse City* we held that the forger was not an "impostor," just an ordinary forger, and that the negligence of the state in failing to discover the forgery during the 4-1/2 year period following the death of the retiree did not preclude it from recovering the amounts paid by it to the collecting bank on the forged indorsements. In this case, the de-

fendant bank has asked us to reconsider that decision.

Neither this case nor *Traverse City* is governed by the Uniform Commercial Code. The forgeries preceded its effective date.

As a general rule, a forged indorsement is ineffective and a bank is liable to a person who pays a forged item bearing the bank's guarantee of prior indorsements.[1] As an exception, a bank is not liable if the person paying the item intended[2] to pay the physical person (the impostor) who poses as someone else. See *Traverse City,* pp 643–645, for a dis-

---

[1] 10 Am Jur 2d, Banks, §§ 634, 635, pp 602–604.

The bank's guarantee in this case fit the general form "pay any bank or banker." Under the Bank Collection Code, PA 1931, No 240 (CLS 1961, § 487.601 *et seq.* [Stat Ann 1957 Rev § 23.331 *et seq.*]) where an item is so indorsed it constitutes a "guaranty by the indorser to all subsequent holders and to the drawee or payor of the genuineness of and the authority to make prior indorsements and also to save the drawee or payor harmless in the event any prior indorsement appearing thereon is defective or irregular in any respect unless such indorsement is coupled with *appropriate words* disclaiming such liability as guarantor." CL 1948, § 487.604 (Stat Ann 1957 Rev § 23.334).

See, also, § 25 of the Uniform Negotiable Instruments Law, which provides:

"Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a dis charge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." PA 1905, No 265 (CL 1948, § 439.25 [Stat Ann 1959 Rev § 19.65]).

Both the foregoing statutory provisions were repealed by the Uniform Commercial Code, MCLA § 440.9992 (Stat Ann 1964 Rev § 19.9992).

[2] It is, of course, a fiction to suppose that the party who is defrauded by an impostor ever intends to pay him. But the concepts here involved are well established and, although it is a contradiction in terms to speak of an intent to pay an impostor, that is the basis on which pre-uniform commercial code cases were decided. See 10 Am Jur 2d, Banks, § 638, pp 606–609, discussing the impostor exception generally, the "intent" standard, and the pre-uniform commercial code split in authority regarding impostures by mail as distinguished from face-to-face impostures and the code solution, § 3-405 (MCLA § 440.3405 [Stat Ann 1964 Rev § 19.3405]).

cussion of the distinction between the impostor-forger and the forger not deemed an impostor.

The state makes it a practice to obtain a certificate or affidavit of identity from retirees annually in an effort to verify the state's continuing obligation to make payment. But in both the earlier case and this one the forger also forged the retiree's signature on that document. As in *Traverse City*, the bank in this case argues that the state "adopted" the document certifying identity submitted by the forger and believed that the person who submitted it was the retiree and, when it continued thereafter to pay, it meant to deal with the person who, as an impostor, submitted the document. The bank asserts that this makes a factual issue requiring submission to a trier of fact. We disagree and think the question presented in this case to be one of law.

The forger did not procure the original issuance of warrants to the retiree. Many warrants were received and cashed by the retiree before he died. Clearly the state intended to pay those warrants to the retiree.[3] Thus, in order to show that this is an impostor case, rather than one of ordinary forgery, the bank must prove a change of intention on the part of the state. We hold as a matter of law that a change of intention cannot be established simply by showing that the forger submitted another forgery, a forged affidavit of identity, at least where, as here, it is not claimed that there was anything in the affidavits of identity submitted by the forger which should have alerted the state to the fact that the person who signed them was not the retiree, that the state was now dealing with someone else.

We also hold, again as did the *Traverse City* Court, that the state's asserted negligence does not

---

[3] It is not claimed that the state intended to pay the forger the warrants issued after the death of the retiree and before receipt by the state of the affidavit of identity.

preclude its recovering from the bank. It is not claimed that anything occurred which should have put the state on notice that it was being defrauded or that the warrants issued by the state in the name of the deceased retiree were, by reason of some act or omission in their preparation, more susceptible to being forged than any other of the hundreds of thousands of warrants the state annually circulates. The negligence with which the state is charged is its failure to have instituted procedures for the detection of repetitious forgeries. We have found no authority which imposes such an affirmative duty upon those who draw and circulate commercial paper.[4]

There is an additional issue in this case not presented in *Traverse City*. Some $3,248.69 of the $5,697.29 judgment is for items collected by the bank from the state over six years before this action was commenced. The bank asserts that the state's claim is to that extent barred by the statute of limitations[5] because it accrued when the items were paid, not when (as the state contends) the forgeries were discovered. The cases are in conflict.[6] There being

---

[4] *Cf. National Metropolitan Bank* v. *United States* (1945), 323 US 454 (65 S Ct 354, 89 L Ed 383) ; *United States* v. *National Exchange Bank of Providence* (1909), 214 US 302 (29 S Ct 665, 53 L Ed 1006, 16 Ann Cas 1184).

[5] CLS 1956, § 609.13 (Stat Ann 1959 Cum Supp § 27.605). If, as the bank contends (and we hold), the state's right of action accrued when it paid the items, then the limitation of actions provisions of the Revised Judicature Act do not govern. See MCLA § 600.5869 (Stat Ann 1962 Rev § 27A.5869). Accordingly, the provision of MCLA § 600.5827 (Stat Ann 1962 Rev § 27A.5827) concerning the time of accrual of claims is not applicable in this case.

[6] See Anno: When statute of limitations starts to run against depositor's cause of action against bank to recover funds paid out on check bearing forged indorsement, 82 ALR2d 933, and later case service stating that three different times of accrual for statute of limitations purposes have been adopted in actions by a depositor against his bank: (1) the time of rendition of the bank's statement to the customer; (2) the time of discovery of the forgery; (3) the time of presentment of the forged instrument.

It is not entirely clear from the report in *City of New York* v. *Fidelity Trust Company of New York* (1934), 243 App Div 46 (276

no controlling Michigan authority, we are free to adopt either view.

---

NYS 341), one of the cases upon which the state relies, whether the city retirement system was a customer of the defendant bank. It may have been; the opinion refers to the bank as a "city depository." The court held that the statute began to run at the time the city made demand upon the bank.

In *Leather Manufacturers' Bank* v. *Merchants' Bank* (1888), 128 US 26, 38 (9 S Ct 3, 32 L Ed 342), the plaintiff's action (by a drawee bank against a collecting bank) was held to have accrued at the time the forged item was paid, not at the time the forgery was discovered. *Cf. United States* v. *National Exchange Bank, supra* fn. 4, p 320. See Anno: Time when statute of limitation commences to run in favor of indorser of paper upon which prior indorsement was forged, 117 ALR 1164, from which it appears that while the discovery rule has been adopted in one case, in most cases the time of payment was held to govern. The cases noted in this annotation, including those mentioned in the ALR Bluebook of Supplemental Decisions, concern two general fact situations, (1) an action by a drawer against a collecting bank, (2) an action by a drawee or intermediate bank against a collecting bank.

The cases in the first group adopt the time of payment as the time of accrual of plaintiff's cause of action. *United States Fidelity & Guaranty Co.* v. *First Nat. Bank of El Paso* (Tex Civ App, 1936), 93 SW2d 562; *cf. Railroad Building, Loan & Savings Association* v. *Bankers' Mortgage Company* (1935), 142 Kan 564 (51 P2d 61, 102 ALR 140).

There is a split of authority in the second group. Most of the cases hold that the statute begins to run at the time of payment. *Leather Manufacturers' Bank* v. *Merchants' Bank, supra* (drawee v. collecting bank); *Columbia Casualty Company* v. *Yanowe* (1936), 158 Misc 749 (286 NYS 859) (collecting bank's subrogee v. collecting bank's depositor); *State National Bank of Lynn* v. *Beacon Trust Company* (1929), 267 Mass 355 (166 NE 837) (drawee v. collecting bank); *Fourth Nat. Bank* v. *Gainesville Nat. Bank* (CA 5, 1935), 80 F2d 490, *cert. den.* 297 US 720 (56 S Ct 598, 80 L Ed 1004) (drawee v. collecting bank); *cf. Mount Vernon Trust Company* v. *Federal Reserve Bank of New York* (1944), 267 App Div 882 (46 NYS2d 450), *affirming* 182 Misc 7 (45 NYS2d 316) (drawee v. indorser); see, also, *Federal Reserve Bank of Atlanta* v. *Atlanta Trust Co.* (CA 5, 1937), 91 F2d 283 (collecting bank v. indorsee). However, in *Home Insurance Company* v. *Mercantile Trust Company* (1926), 219 Mo App 645 (284 SW 834) (drawee v. intermediate indorser and collecting bank) the court held that the plaintiff's action did not accrue until the time of discovery.

The uniform commercial code adopts the concept of an absolute time limit for actions by a customer against his bank; actions based on forgery of a payee's signature must be commenced within three years of the time of delivery of the bank statement and items to the customer without regard to whether the customer learns of the forgery within that time. MCLA § 440.4406(4) (Stat Ann 1964 Rev § 19.4406[4]).

Where the statute of limitations is short[7] or the claim might not be discovered even if care is exercised (e.g., a claim based on alleged malpractice)[8] a discovery rule has merit, but where, as here, there is a relatively long statute of limitations, the interest in terminating liability at some point must prevail. The claim asserted in this case against the defendant bank concerns events extending over an 8-1/2 year period. In the next case possibly 15 or 20 years may have elapsed between the first forgery and discovery. We do not think it reasonable to impose such indeterminate liability.

Our view of the matter is somewhat influenced by the Federal experience. State statutes of limitations are not binding on the Federal government;[9] until 1946 there was no applicable Federal statute of limitations barring an action by the Federal government against a bank which had forwarded to the treasury for collection a government warrant bearing a forged payee's indorsement. Impressed with the hardship this imposed on all indorsers subsequent to the forgery, Congress responded in that year by enacting a statute barring the United States from asserting a claim later than six years after the date of presentment or payment.[10]

In Michigan there is no need for legislative action. The legislatively-declared public policy of this state is that the state's right to maintain a personal action is subject to pertinent general statutes of limita-

---

[7] Benge v. Michigan National Bank (1954), 341 Mich 441.

[8] Johnson v. Caldwell (1963), 371 Mich 368. The rule of this case was legislatively repealed. MCLA § 600.5838 (Stat Ann 1962 Rev § 27A.5838).

[9] United States v. Summerlin (1940), 310 US 414 (60 S Ct 1019, 84 L Ed 1283).

[10] 60 Stat 31 (1946), 31 USCA § 129. See 1946 US Code Cong Serv p 1070, and United States v. Mercantile Nat. Bank at Dallas (WD La, 1946), 67 F Supp 759, for legislative history.

tions.[11]   It is our duty to adopt a reasonable and fair rule of law implementing that policy.

We recognize that the state issues a large number of warrants daily and the difficulty of detecting or discovering a forgery of a particular payee's indorsement.   Nevertheless, we think the state is adequately protected by rules of law which make the bank liable if it collects on a forged indorsement without regard to the state's negligence in failing to institute procedures to detect forgeries but which limit its recovery to amounts paid within six years of the commencement of the action against the bank.

Remanded to the trial court for the entry of a judgment consistent with this opinion.   No costs.

All concurred.

---

11 CL 1948, § 609.28 (Stat Ann § 27.620), presently MCLA § 600-.5821(3) (Stat Ann 1962 Rev § 27A.5821[3]).